**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| IN RE: NOVANT HEALTH, INC | LEAD Case No. 1:22-cv-00697-CCE-JEP<br>Consolidated with: 1:22-cv-00700-CCE-JEP; 1:22-cv-00709-CCE-JEP; 1:22-cv-00799-CCE-JEP; and 1:22-cv-00970-CCE-JEP |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiffs Keith David Allen, Karyn Cook, Daymond Cox, Kevin Curry, Meghan Curry, Dr. Richard Nero, David Novack, Cheryl Taylor, Fernando Valencia, and Natalie Wells-Reyes ("Plaintiffs"), individually and on behalf of others similarly situated, hereby submit their memorandum of law in support of their Motion for Final Approval of Class Action Settlement.

## I.    INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 23(e)(2) ("Rule 23") and this Court's November 6, 2023 Order granting preliminary approval of this class action Settlement (ECF No. 55) ("Preliminary Approval Order,"), Plaintiffs respectfully seek final approval of their class action Settlement[1] with Defendant Novant Health, Inc, ("Novant" or "Defendant" and, together with Plaintiffs, the "Parties"). *See* Fed. R. Civ. P. 23(e)(2). The

---

[1] Unless otherwise indicated, capitalized terms used in this Memorandum have the same meanings as in the Settlement Agreement and Release (the "Settlement Agreement" or "S.A."). ECF No. 52-1.

Settlement resolves all claims against Novant on behalf of a class of persons regarding the use of an Internet tracking technology supplied by a third party, called a pixel (referred to as a "Tracking Tools" herein) that allegedly disclosed certain personal or health related information to a third-party vendor. The Settlement Class is defined as all individuals residing in the United States who Novant identified as potentially having their personal or health-related information disclosed to a third party because of Novant's use of Tracking Tools on Novant's websites or MyChart patient portal between May 1, 2020 and August 12, 2022. S.A. ¶ 14(ll).

Through extensive arm's-length negotiations, the Parties reached a Settlement that provides for immediate and significant benefits for the Class. *See* Declaration of Gary M. Klinger in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement, ECF No. 52-2 ("Klinger Decl."). The Settlement is the result of hard-fought negotiations between experienced counsel who had a comprehensive understanding of the strengths and weaknesses of each Party's claims and defenses. *See id.* ¶¶ 26-27, 31-32. If approved, the Settlement will provide Class Members with the precise relief this lawsuit was filed to obtain.

Specifically, the Settlement negotiated on behalf of the class provides for the ability to claim a *pro rata* share of a $6,660,000 non-reversionary Settlement Fund. ECF 52-1, S.A. ¶¶ 14(nn), 18, 21, 28.

Class Counsel zealously prosecuted Plaintiffs' claims, achieving the Settlement Agreement only after a hard-fought motion to dismiss on which briefing was concluded on February 10, 2023. ECF No. 34. While the parties awaited the Court's decision, the parties

engaged in significant informal discovery and participated in private mediation on July 21, 2023, before Hunter R. Hughes. *See* Klinger Decl., ¶¶ 32-33. While the mediation was productive, it did not result in a settlement during mediation. *Id.* Over the following several weeks the Parties continued to negotiate and ultimately reached an agreement in principle on a settlement on August 21, 2023. *Id.* Class Counsel then worked diligently over the course of several months finalizing the Settlement Agreement and associated exhibits, engaging a settlement administrator, drafting notice forms and the claim form, and preparing the Motion for Preliminary Approval (ECF No. 51). After this Court granted preliminary approval, the Settlement Administrator—with the help of the Parties— disseminated Notice to the Class and implemented the user-friendly claims process that the Court approved. Individual notice was provided directly to Class Members via first class mail. The Settlement Administrator attempted to send Notice to 100% of the Settlement Class and reached 99.2% of the Settlement Class, easily satisfying Rule 23(c)(2)(B) and due process standards. *See* Declaration of Jordan Turner Regarding Implementation of Notice Program and Verification of Compliance with Notice Requirements ("Turner Decl."), ¶ 15 (ECF No. 63); Fed. R. Civ. P. 23(c)(2)(B). The Notice provided each Settlement Class Member with information regarding how to reach the Settlement Website, make a Claim, and how to opt-out or object to the Settlement.

The reaction from Settlement Class Members to the Settlement is resoundingly positive. The deadline for Settlement Class Members to opt-out or object to the Settlement was April 4, 2024. Only thirty-six individuals timely requested exclusion from the Settlement, and there were no objections to the Settlement or Plaintiffs' Motion for an

Award of Attorneys' Fees, Reimbursement of Expenses, and Service Awards to Class Representatives, filed on March 20, 2024. Turner Decl. ¶¶ 18-19. The Claims Deadline was May 6, 2024, and as of May 15, 2024, the Settlement Administrator has received 161,766 claims. *See* Turner Decl. ¶ 17. Of these, 159,881 are timely, from Settlement Class Members, and non-duplicative. *Id.*

The Settlement delivers tangible, immediate benefits to Settlement Class Members addressing the potential harms caused by Defendant's use of Tracking Tools, without protracted and inherently risky litigation. It delivers a fair and adequate resolution for the Class and merits final approval. Accordingly, for the reasons set forth herein, Plaintiffs respectfully request this Court grant their Motion for Final Approval of Class Action Settlement ("Motion for Final Approval"), as well as Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Service Awards to Class Representatives ("Motion for Attorneys' Fees"), filed on March 20, 2024. ECF No. 60.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

In the interest of judicial efficiency, for factual and procedural background on this case, Plaintiffs refer this Court to Plaintiffs' Memorandum in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement, filed on October 12, 2023, ECF No. 52, and the accompanying exhibits filed in conjunction therewith. Plaintiffs also refer the Court to Plaintiffs' Motion for Attorneys' Fees and supporting exhibits. ECF Nos. 60 and 61.

## III. THE SETTLEMENT TERMS

As described in the Settlement Agreement, the settlement benefits are substantial, and will be paid from a $6,600,000 non-reversionary settlement fund.

### A. The Settlement Class

The Settlement Class is defined as all individuals residing in the United States who defendant identified as potentially having their personal or health-related information disclosed to a third party because of Defendant's use of Tracking Tools on Defendant's websites or MyChart patient portal between May 1, 2020 and August 12, 2022. Excluded from the Class are (i) Defendant, any entity in which Defendant has a controlling interest, and Defendant's affiliates, parents, subsidiaries, officers, directors, legal representatives, successors, and assigns; (ii) any judge, justice, or judicial officer presiding over the Litigation and the members of their immediate families and judicial staff; and (iii) any individual who timely and validly excludes themselves from the Settlement. S.A. ¶ 14(ll).

### B. The Settlement Benefits

Pursuant to the settlement, Novant will establish a $6,660,000 non-reversionary Settlement Fund. *Id.* ¶¶ 14(nn), 18, 21. Settlement Class Members were given an opportunity to submit a claim for a *pro rata* share of the Settlement Fund. *Id.* ¶ 28. To submit a claim a Class Member needed only submit a valid Claim Form before the Claim Deadline of May 4, 2024. *Id.* & Ex. A; Preliminary Approval Order, § VI.

As of the Claim Deadline, the Settlement Administrator has received 161,766 claims. *See* Turner Decl. ¶ 17. Of these, 159,881 are timely, from Settlement Class Members, and non-duplicative. *Id.*

To calculate the Cash Payment to each Class Member, the Settlement Administrator will first distribute monies from the Settlement Fund as outlined in the Settlement Agreement and then divide the Net Settlement Fund *pro rata* amongst the Settlement Class Members who filed valid Claim Forms.[2]

In addition to the Class Relief, all costs for administration and notice will be paid from the Settlement Fund. Also, Plaintiffs have previously moved for an award of attorneys' fees, reimbursement of expenses, and service awards, also to be paid from the non-reversionary Settlement Fund. *See* ECF Nos. 60, 61.

## IV.    NOTICE AND CLAIMS ADMINISTRATION

The Parties agreed to engage and the Court appointed Postlethwaite & Netterville ("P&N") to act as Settlement Administrator to oversee the administration of the Settlement. Preliminary Approval Order, ECF No. 55, ¶ 10.

### A.    CAFA Notice

P&N began its work by providing notice of the proposed Settlement pursuant to the Class Action Fairness Act 28 U.S.C. § 1715(b) ("the CAFA Notice"). Turner Decl. ¶ 5. At Novant's counsel's direction, on October 23, 2023, P&N sent the CAFA Notice to (i) the Attorneys General of all U.S. states and the Attorney General of the United States. *Id.* On March 11, 2024, supplemental notice containing the number of potential Settlement Class Members residing in each state was mailed to the Attorneys General of all U.S. states, as

---

[2] The Settlement Administrator estimates that the pro rata payment to each Settlement Class Member who filed a valid and timely Claim will be approximately $24.67. Turner Decl., ¶ 17.

Case 1:22-cv-00697-CCE-JEP    Document 65    Filed 05/23/24    Page 6 of 26

well as the Attorney General of the United States. A copy of the CAFA Notice, supplemental CAFA Notice, and mail list are attached as Exhibit A to the Turner Declaration. ECF No. 63.

## B. Direct Mail Notice

P&N received the Class List on December 6, 2023. *Id.* ¶ 6. The list contained 1,262,091 records. *Id*. P&N de-duplicated the data records based on name and address and determined that 1,361,159 unique Settlement Class Members existed to which notice should be issued (the "Class Notice List"). *Id*.

Beginning on January 4, 2023, P&N caused the Short-Form Notice to be sent via email ("Email Notice") to the 1,159,953 deliverable email addresses on the Class Notice List. *Id*. ¶ 7. Ultimately, the Email Notice was successfully delivered to 1,147,225 email addresses, or 98.9% deliverability.

P&N also caused the Postcard Notice to be mailed via First-Class Mail to Settlement Class Members for which a mailing address was available from the Class Notice List and either (1) no deliverable email address was available or (2) Email Notice was not successfully delivered. The Postcard Notice included (a) the web address to the Settlement Website for access to additional information and documents, and (b) rights and options as a Settlement Class Member and the dates by which to act on those options, and the requested attorneys' fees and expenses, and (c) the date of the Final Approval Hearing. The Notice mailing began on January 4, 2024, and was completed on or before February 1, 2024, in accordance with the Preliminary Approval Order. *Id*. ¶ 8. Prior to the mailing, all mailing addresses were checked against the National Change of Address (NCOA) database

maintained by the United States Postal Service ("USPS"). In addition, the addresses were certified via the Coding Accuracy Support System (CASS) to ensure the quality of the zip code and verified through Delivery Point Validation (DPV) to verify the accuracy of the addresses. *Id*. ¶ 9. P&N successfully mailed Postcard Notice to 202,564 Settlement Class Members. *Id*. ¶ 15. In total, notice reached 1,349,789 Settlement Class Members, or 99.2% of the Class. *Id*.

C. **Settlement Post Office Box, Website, Toll-Free Number, and Email Support**

In addition to the individual direct notice provided, P&N created a dedicated Settlement Website. *Id*. ¶ 12. The Settlement Website "went live" on September 5, 2023, and contains details of the Settlement, including the Settlement benefits, contact information for the Settlement Administrator, how to submit a claim, the procedure for how to opt out of or object to the Settlement, Frequently Asked Questions, all related Court-documents, and a copy of the Long Form Notice.[3] *Id*. The Settlement Website provided Settlement Class Members with the opportunity to file Claim Forms online as well as downloadable versions of the claim form. *Id*. As of May 15, 2024, the Settlement Website received 248,684 unique visits. *Id*. ¶ 8. The Settlement Website will remain active until 120 days after the Effective Date of the Settlement. S.A. ¶ 49.

P&N also established a toll-free help line ("Toll-Free Number"), with an Interactive Voice Response ("IVR") system, to provide Settlement Class Members with additional

_____

[3] A copy of the Long Form Notice is attached to the Settlement Agreement (ECF 52-1) as Exhibit B.

Case 1:22-cv-00697-CCE-JEP   Document 65   Filed 05/23/24   Page 8 of 26

information about the settlement, which is available 24 hours per day, seven days per week. *Id.* ¶ 13. Settlement Class Members can call and interact with the IVR system, which provides important settlement information and offers the ability to leave a voicemail message to address specific requests or issues. *Id.* As of May 15, 2024, the IVR has received 8,157 calls for a total of 20,588 minutes. *Id.*

P&N established an Email address, info@nhprivacysettlement.com, to provide an additional option for Settlement Class Members to ask specific questions and make requests to the Settlement Administrator for support. As of May 15, 2024, P&N has and responded to 2,836 emails. *Id.* ¶ 14.

### D. Claims

The timing of the claims process was structured to ensure that all Settlement Class Members had adequate time to review the terms of the Settlement Agreement, make a claim or decide whether they would like to opt-out or object. The deadline to file a claim was May 6, 2024, and as of May 15, 2024, P&N has received 161,766 claims. *Id.* ¶ 17. Of these, P&N has determined that 159,881 claims (approximately 11.7% of the Settlement Class Members) are timely, from Settlement Class Members, and non-duplicative. *Id.*

### E. Requests for Exclusion and Objections

Settlement Class Members were provided up to and including April 4, 2024—ninety days after the Notice period began and sixty days after the Notice period completed—to object to or to request exclusion from the Settlement. Preliminary Approval Order, § VI. Similar to the timing of the Claims Process, the timing with regard to objections and

requests for exclusion was structured to give Settlement Class Members sufficient time to access and review the Settlement documents—including Plaintiffs' Motion for Attorneys' Fees, which was filed fifteen (15) days prior to the deadline for Settlement Class Members to object or exclude themselves from the Settlement. *Id.* As of May 15, 2024, P&N has received only thirty-seven (37) timely exclusion requests and no objections to the Settlement. *Id.* ¶¶ 18-19.

## V. PRELIMINARY APPROVAL

Plaintiffs filed the Motion for Preliminary Approval on October 12, 2023, and the Court entered the Preliminary Approval order on November 6, 2023. ECF Nos. 51, 52, 55. In the Preliminary Approval Order, the Court appointed Plaintiffs Keith David Allen, Karyn Cook, Daymond Cox, Kevin Curry, Meghan Curry, Dr. Richard Nero, David Novack, Cheryl Taylor, Fernando Valencia, and Natalie Wells-Reyes as Class Representatives pursuant to Rule 23(e)(2)(A) and Gary M. Klinger and Scott C. Harris of Milberg Coleman Bryson Phillips Grossman, PLLC as Class Counsel. Rule 23(e)(2)(A); Preliminary Approval Order ¶¶ 8-9. The Court also appointed P&N as the Settlement Administrator. *Id.* ¶ 10. The Court further approved the forms of notice—which state the amount of attorneys' fees that would be requested, the fact that costs and expenses would be requested, and the amount of service awards that would be requested—and approved the plan for disseminating notice to the Class. *Id.* ¶¶ 11-15; S.A. Exs. B-C.

Settlement Class Members had until April 4, 2024, to submit any requests for exclusions and objections. Preliminary Approval Order, ¶¶ 16-18. Settlement Class Members also had until May 6, 2024, to submit claims. *Id.* ¶ 15. Class Counsel submitted

a separate Motion for Attorneys' Fees, filed on March 20, 2024—the Court-ordered deadline to do so. *Id*. In the Court's Preliminary Approval Order, the Court scheduled the Final Approval Hearing for June 6, 2024, at 9:30 a.m., at which time the Court will determine whether: (1) the Settlement is fair, reasonable, and adequate; (2) the Settlement Class should be finally certified; (3) the preliminary appointment of Class Counsel should be made final; (4) the preliminary appointment of the Class Representatives should be made final; (5) Class Counsel's Motion for Attorneys' Fees should be granted; and (6) a final judgment should be entered. ECF No. 55, ¶ 22.

## VI. LEGAL STANDARD

Plaintiffs bring this motion pursuant to Federal Rule of Civil Procedure 23(e), under which a class action may not be settled without approval of the Court. Fed. R. Civ. P. 23(e). If the court concludes that the proposed settlement is "fair, reasonable, and adequate," it will give final approval to the settlement. *In re Red Hat, Inc. Sec. Litig.*, 5:04-CV-473-BR(3), 2010 WL 2710517, at *1 (E.D.N.C. June 11, 2010) (citations omitted);[4] *see also In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158-59 (4th Cir. 1991) ("*Jiffy Lube*")). The court begins with a "strong initial presumption that the compromise is fair and reasonable." *S.C. Nat. Bank v. Stone*, 139 F.R.D. 335, 339 (D.S.C. 1991).

The Court must make a determination as to the fairness, reasonableness, and adequacy of the settlement terms. Fed. R. Civ. P. 23(e)(2); *Manual for Complex Litigation*

---

[4] Report and recommendation adopted, 5:04-CV-473-BR, 2010 WL 2710446 (E.D.N.C. July 8, 2010).

*(Fourth)* ("MCL"), § 21.632 (4th ed. 2004). "Fairness" is determined by examining "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of . . . class action litigation." *Jiffy Lube*, 927 F.2d at 158-159; *Horton v. Merrill Lynch, Pierce, Fenner & Smith*, 855 F. Supp. 825, 828 (E.D.N.C. 1994).

"Adequacy" is determined by examining "(I) the relative strength of plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *Jiffy Lube*, 927 F.2d at 159.

The primary concern for a court in reviewing a proposed class settlement is to ensure that the rights of class members have received sufficient consideration in settlement negotiations. *Jiffy Lube*, 927 F.2d at 158-59. Approval of a class action settlement is committed to the "sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis, in light of the relevant circumstances." *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001).

Moreover, as the Fourth Circuit has recognized, courts strongly favor and encourage settlements. *See, e.g., United States v. Manning Coal Corp.*, 977 F.2d 117, 120 (4th Cir. 1992) ("It has long been clear that the law favors settlement."). "This is particularly true in

class actions" and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See, e.g., Six v. LoanCare, LLC*, No. 5:21-cv-00451, 2022 WL 16747291, at *3 (S.D. W. Va. Nov. 7, 2022) (slip copy) (quoting *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 311 (3d Cir. 2011) and citing *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998 (noting the "strong judicial policy in factor of settlements, particularly in the class action context")).

Plaintiffs now ask this Court to grant final approval of the proposed Settlement as fair, adequate, and reasonable so that Plaintiffs and Settlement Class Members may begin to appreciate the monetary and non-monetary benefits of the Settlement.

## VII.    ARGUMENT

### A.    The Notice Satisfies Federal Rule of Civil Procedure 23 and Due Process

To satisfy due process, notice to class members must be the best practicable and reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Fed. R. Civ. P. 23(e); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Notice provided to the class must be sufficient to allow class members "a full and fair opportunity to consider the proposed decree and develop a response." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). While individual notice should be provided where class members can be located and identified through reasonable effort, notice may also be provided by U.S. Mail, electronic, or other appropriate means. Fed. R. Civ. P. 23(c)(2)(B). Under Rule 23(c)(2)(B), the notice must:

(i) clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.*

Here, the direct email and mail Notice of Proposed Settlement (in Postcard format) is consistent with Notice programs approved by the Fourth Circuit. *See, e.g., McAdams v. Robinson,* 26 F.4th 149, 158 (4th Cir. 2022) (notice by email, postcard, and longform deemed adequate); *Johnson v. Goodwin*, No. 1:18CV467, 2024 WL 1097753, at *5 (M.D.N.C. Mar. 6, 2024) (email notice coupled with publication plan deemed adequate). As in *McAdams*, the notices all contained the URL of or hyperlinked to the settlement website, which contains the full Settlement Agreement, the Long-Form notice, the Short-Form notice, and FAQs. The Notice adequately informed Settlement Class Members of the nature of the action, the definition of the class, the claims at issue, the ability of a Settlement Class Member to object or exclude themselves, and/or enter an appearance through an attorney, that the Court will exclude any class member who requests exclusion, and the binding effect of final approval and a class judgment. *See* S.A. Exs. B-C; ECF No. 52-1. The Notice utilized clear and concise language that is easy to understand, and the Notice was organized in a way that allowed Settlement Class Members to easily find any section that they may be looking for. Thus, it was substantively adequate.

-14-

Moreover, the Settlement Administrator—with the assistance of the Parties—has taken all necessary measures to ensure notice reached as many of the Settlement Class Members as possible. Direct notice was sent to 100% of the Settlement Class Members, reaching 99.2% of the Settlement Class. Turner Decl. ¶ 15. Such notice complies with the program approved by this Court in its Preliminary Approval Order, is consistent with (and better than) notice programs approved in the Fourth Circuit and across the United States, is considered a "high percentage," and is within the "norm." *See* Barbara J. Rothstein & Thomas E. Willging, Fed. Jud. Ctr., "Managing Class Action Litigation: A Pocket Guide or Judges", 27 (3d Ed. 2010); *Smith v. Res-Care, Inc*., No. CV 3:13-5211, 2015 WL 6479658, at *5 (S.D.W. Va. Oct. 27, 2015) (approving a "92.13% effective delivery rate to identified Class Members" as an "acceptable, and event exceptional, rate"); *In re Serzone Prods. Liab. Litig.*, 231 F.R.D. 221, 236 (S.D. W. Va. 2005) (approving publication notice rate of approximately 80% of the U.S. population where Settlement Class Members were exposed to notice an average of 2.6 times throughout notice program).

## B. The Settlement Class Should be Finally Certified for Settlement Purposes

As Plaintiffs set forth at length in their Motion for Preliminary Approval, the proposed Settlement Class satisfies all of the requirements of Rule 23. *See* Fed. R. Civ. P. 23(a), (b)(3). The Court preliminarily certified the Settlement Class in its Preliminary Approval Order. Prelim. Approval Order, ECF No. 55, ¶ 4. Nothing has occurred that would change the Court's previous determination that the action satisfies the requirements under Rule 23. Fed. R. Civ. P. 23(a), (b)(3). Specifically, the action still meets the

requirements of numerosity, commonality, typicality, adequacy of representation, predominance, and superiority under Rule 23(a) and (b)(3). *Id.* Thus, the Court should finally certify the Settlement Class for settlement purposes.

### C. The Settlement is Fair, Reasonable, and Adequate and Should Be Approved

#### 1. The Terms of the Settlement Warrant Final Approval under the *Jiffy Lube* Test

To determine final approval, the Fourth Circuit "adopted a bifurcated analysis, separating factors relating to the 'fairness' of the settlement from those relating to its 'adequacy'." *Horton*, 855 F. Supp. at 828.[5] Fairness focuses on whether the proposed settlement was the product of good faith bargaining at arm's length, free from collusion. *Jiffy Lube*, 927 F.2d at 159. Adequacy "focuses on whether the consideration provided to the class members is sufficient." *Beaulieu v. EQ Indus. Servs., Inc.*, No. 5:06-CV-00400BR, 2009 WL 2208131, at *23 (E.D.N.C. July 22, 2009). The proposed settlement is "not to be judged against a hypothetical or speculative measure of what might have been achieved by negotiators" in the best of all possible deals. *Linney v. Cellular Alaska P'ship*,

---

[5] "In the Fourth Circuit, the Rule 23(e)(2) analysis has been condensed into the two-step *Jiffy Lube* test which examines the fairness and adequacy of the settlement." *Skochin v. Genworth Fin., Inc.*, No. 3:19-cv-49, 2020 WL 6697418, at *2 (E.D. Va. Nov. 12, 2020); *In re Lumber Liquidators Chinese-Manufactured Flooring Prods., Sales Pracs. & Prods. Liab. Litig.*, 952 F.3d 471, 484 (4th Cir. 2020) ("[B]ecause our factors for assessing class action settlement almost completely overlap with the new Rule 23(e)(2) factors, the outcome … would be the same under both our factors and the Rule's factors."); *see also Yost v. Elon Prop. Mgmt. Co.-Lexford Pools 1/3, LLC*, No. ELH-21-1520, 2023 WL 185178, at *4 (D. Md. Jan. 13, 2023) (same and granting final approval after evaluating adequacy and fairness of settlement under *Jiffy Lube* factors).

151 F.3d 1234, 1242 (9th Cir. 1998) (affirming district court's final approval of class settlement).

### 2. The Settlement Terms Meet the *Jiffy Lube* Adequacy Requirement

In analyzing the adequacy of a proposed settlement, the Court should consider the *Jiffy Lube* factors: (1) the relative strength of the case on the merits; (2) any difficulties of proof or strong defenses the plaintiff and class would likely encounter if the case were to go to trial; (3) the expected duration and expense of additional litigation; (4) the solvency of the defendants and the probability of recovery on a litigated judgment; and (5) and the degree of opposition to the proposed settlement. *Beaulieu*, 2009 WL 2208131 at *26 (citing *Jiffy Lube*, 927 F.2d at 158; *Horton*, 855 F. Supp. at 829-30).

### a. The Relative Strength of the Case, the Risks, and the Duration and Expense of Additional Litigation Weigh in Favor of Final Approval

By their very nature, because of the many uncertainties of outcome, difficulties of proof, and lengthy duration, class actions readily lend themselves to compromise. *See S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990) (noting that settlement spares litigants the uncertainty, delay, and expense of a trial and appeals while simultaneously reducing the burden on judicial resources). Here, the first three *Jiffy Lube* factors are closely related, and weigh in favor of final approval of the proposed settlement.

The value achieved through the Settlement Agreement is guaranteed, whereas the chances of prevailing on the merits are uncertain. While Plaintiffs believe their case is strong, there would be substantial risk in litigating the case. Cases such as this, involving

alleged violations of privacy based on tracking technology, are incredibly novel, complex, risky, and expensive. *See, e.g.*, *In re Google LLC St. View Elec. Commc'ns Litig*., 611 F. Supp. 3d 872, 879, 888 (N.D. Cal. 2020), *aff'd sub nom. In re Google Inc. St. View Elec. Commc'ns Litig*., 21 F.4th 1102 (9th Cir. 2021) (describing as "a risky case" a class action against Google for violations of the Electronic Communications Privacy Act of 1986 ("ECPA") for "us[ing] its Street View vehicles to intentionally intercept and store electronic communications transmitted by class members over unencrypted wireless internet connections" and approving a settlement which provided for injunctive relief and a $13 million settlement fund used to fund *cy pres* awards); *Campbell v. Facebook, Inc*., 951 F.3d 1106, 1112, 1115 (9th Cir. 2020) (affirming approval of settlement in class action alleging Facebook violated the ECPA by capturing, reading, and using website links included in private messages sent or received by class members and which the District Court described as "'very risky for the class.'")

These same issues exist in data breach privacy actions, which are a close relative to this one. *See, e.g., In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800, 2020 WL 256132, at *32-33 (N.D. Ga. Mar. 17, 2020) (recognizing the complexity and novelty of issues in data breach class actions); *Gordon v. Chipotle Mexican Grill, Inc*., No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex.") ("This field of litigation is evolving; there is no guarantee of the ultimate result."). This case involves 1,361,159 class members, complicated and technical facts, a well-funded and motivated defendant, and a novel theory of damages on behalf of Plaintiffs.

There are numerous substantial hurdles Plaintiffs would have to overcome before the Court might find a trial appropriate, including a ruling on Defendant's motion to dismiss, Plaintiffs' motion for class certification, and motions for summary judgment. Like any complex class action, tracking pixel cases are challenging and time consuming to litigate. This is particularly true here, where Novant disputes Plaintiffs' allegations and denies that Plaintiffs have even been harmed let alone that it is liable for any harm Plaintiffs suffered. Novant has indicated it will vigorously defend the case. While Plaintiffs believe their claims are strong, success is not guaranteed. Thus, despite Plaintiffs' confidence in the strength of this case, numerous legal issues and factual disputes exist that undermine the certainty of a more favorable outcome for the Settlement Class.

Rather than face this risk and uncertainty, the Settlement allows for Settlement Class Members to obtain benefits within the near future—as opposed to potentially waiting for years—and eliminates the possibility of receiving no benefits whatsoever. *See In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 216 (E.D. Pa. 2014) ("[I]f the parties were to continue to litigate this case, further proceedings would be complex, expensive and lengthy, with contested issues of law and fact .... That a settlement would eliminate delay and expenses and provide immediate benefit to the class militates in favor of approval.").

Litigating this case to a favorable conclusion will require a considerable amount of time and resources and weighs in favor of accepting the Settlement now. *See In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) ("Even if Plaintiffs were to succeed on the merits at some future date, a future victory is not as

valuable as a present victory. Continued litigation carries with it a decrease in the time value of money, for '[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now.'") (internal citation omitted)).

Here, the monetary relief of a *pro rata* share of the $6,6600,000 non-reversionary common fund (minus the costs of settlement administration and any award of attorneys' fees, expenses, and service awards) provided for in the Settlement represents a significant and excellent result for the Settlement Class. This sizeable recovery for the Settlement Class represents real, meaningful benefits for Settlement Class Members. It provides benefits to all Settlement Class Members who make a claim, compensating any who have experienced violations of their privacy as a result of Novant's use of the Tracking Tools. Accordingly, the Settlement easily weighs in favor of final approval.

### b. The Solvency of Novant is a Neutral Factor

There is no evidence that Novant is in danger of becoming insolvent. Thus, this factor is neutral in the analysis and does not preclude the Court from granting final approval.

### c. The Degree of Opposition to the Proposed Settlement

The reaction of the Settlement Class to the proposed Settlement has been undeniably positive. As of May 15, 2024, long after the April 4, 2024 exclusion deadline, out of the 1,361,159 Settlement Class Members who were sent notice, P&N received only thirty-seven (37) timely exclusion requests. Turner Decl. ¶ 18. Moreover, as of May 15, 2024, P&N has received no objections to the Settlement. *Id.* ¶ 19. This is a *de minimis* number of requests for exclusion, and the opt-outs do not undercut the conclusion that the Settlement

-20-

satisfies the adequacy requirement. *See Skochin*, 2020 WL 6697418, at *4 (proposed settlement satisfied adequacy requirement with 191 opt-outs and 32 objections out of a class of 207,000). "'It is well established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.'" *West v. Continental Automotive, Inc.*, No. 3:16-cv-00502-FDW-DSC, 2018 WL 1146642, at *6 (W.D.N.C. Feb. 5, 2018)) (quoting *National Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (collecting cases)). The presumption in favor of final approval applies here, with no objection to the Settlement and a negligible number of opt-outs.

### 3. The Settlement Terms Meet the *Jiffy Lube* Fairness Requirement

The Fourth Circuit has listed four factors that a court should consider in deciding whether a proposed settlement agreement is fair and was reached in good faith and without collusion: (1) the posture of the case at the time it settled; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the relevant experience of counsel. *Beaulieu*, 2009 WL 2208131 at *24 (citing *Jiffy Lube*, 927 F.2d at 158-59; *Horton*, 855 F. Supp. at 828).

"A proposed class action settlement is considered presumptively fair where there is no evidence of collusion and the parties, through capable counsel, have engaged in arms' length negotiations." *Harris v. McCrackin*, Nos. 2:03-3845-23, 2:03-3943-23, 2:04-2314-23, 2006 WL 1897038, at *5 (D.S.C. July 10, 2006); *see also ADESSO Homeowners' Ass'n v. Holder Properties, Inc.*, No. 3:16-cv-710-JFA, 2017 WL 11272589, at *8 (D.S.C. May 23, 2017) ("[A] proposed class action settlement is considered presumptively fair where

there is no evidence of collusion and the parties, through capable counsel, have engaged in arms' length negotiations."). This presumption applies here.

This case settled in the wake of the Court's decision on Defendant's motion to dismiss and as the parties were beginning to engage in fact and expert discovery. This was a propitious time for settlement, as the Parties could direct their resources towards a possible resolution, as opposed to lengthy and expensive formal discovery and protracted litigation. The Settlement is the result of protracted and intense, arm's-length negotiations between highly experienced attorneys who are familiar with class action litigation—and privacy class actions in particular—and with the legal and factual issues in these cases. *See* Klinger Decl. ¶¶ 21-38 & Exs. A-F thereto; Declaration of Scott C. Harris in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of the Class Action Settlement, ECF No. 53, ¶ 11; Supplemental Declaration of Gary M. Klinger in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Supp. Klinger Decl.") ¶¶ 2-5.

Before discussing potential settlement, the Parties completed an extensive investigation and exchanged informal discovery—both of which helped them to fully understand the strengths and weaknesses of their claims and defenses and the risks of continued litigation. Klinger Decl. ¶¶ 26, 32. The Parties then participated in a full day of mediation with Hunter R. Hughes, Esq., negotiating at arm's-length and communicating their positions through him. *Id.* ¶ 33. This session with Mr. Hughes did not result in an agreement to the principal terms of the Settlement. *Id.* Following their mediation session, the Parties continued negotiating back and forth for weeks before reaching a settlement in

principle and then for many weeks more negotiating the particular terms of the Settlement Agreement and associated exhibits. *Id*. Throughout all negotiations, Class Counsel and counsel for Novant fought hard for the interests of their respective clients, as evidenced by the motion practice in this case. Negotiations were at arm's-length, and there is no evidence of collusion.

Accordingly, the Settlement satisfies the *Jiffy Lube* test for fairness and adequacy, and the Settlement should therefore be finally approved by the Court.

## VIII.  CONCLUSION

Plaintiffs have negotiated a fair, adequate, and reasonable settlement that guarantees Settlement Class Members substantial, immediate relief in the form of a *pro rata* payment from a non-reversionary $6,660,000 common fund. For all the reasons stated above, Plaintiffs respectfully request this Court grant their Motion for Final Approval of the Class Action Settlement, finally certify the Settlement Class, and determine that the Notice met the requirements of Rule 23(c)(2)(B) and due process.[6]

Respectfully submitted this 23rd day of May 2024.

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**

*/s/ Scott C. Harris*
Scott C. Harris
N.C. Bar No.: 35328
900 W. Morgan Street
Raleigh, North Carolina 27603
Telephone: (919) 600-5000
Facsimile: (919) 600-5035
sharris@milberg.com

---

[6] A [Proposed] Final Approval Order and Judgment is attached hereto as **Exhibit 1.**

-23-

Gary M. Klinger (*pro hac vice*)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
(866) 252-0878
gklinger@milberg.com

Terence R. Coates (*pro hac vice*)
**MARKOVITS, STOCK &**
**DEMARCO, LLC**
119 East Court Street, Suite 530
Cincinnati, OH 45202
Tel: (513) 651-3700
tcoates@msdlegal.com

M. Anderson Berry (*pro hac vice*)
**CLAYEO C. ARNOLD,**
**A PROFESSIONAL LAW CORP.**
865 Howe Avenue
Sacramento, CA 95825
Tel: (916) 239-4778
aberry@justice4you.com

Rachele R. Byrd (*pro hac vice*)
**WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: (619) 239-4599
Facsimile: (619) 234-4599
byrd@whafh.com

Bryan L. Bleichner
Philip J. Krzeski
**CHESTNUT CAMBRONNE PA**
100 Washington Avenue South
Suite 1700
Minneapolis, MN 55401
Tel: (612) 339-7300
bbleichner@chestnutcambronne.com
pkrzeski@chestnutcambronne.com

-24-

Joseph M. Lyon
**THE LYON LAW FIRM**
2754 Erie Ave.
Cincinnati, OH 45208
Tel: (513) 381-2333
jlyon@thelyonfirm.com

*Attorneys for Plaintiffs and the*
*Settlement Class*

## CERTIFICATION OF WORD COUNT

I hereby certify that the foregoing brief complies with Local Rule 7.3(d) and that

this brief does not exceed 6,250 words.

**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**

*/s/ Scott C. Harris*
Scott C. Harris
N.C. Bar No.: 35328
900 W. Morgan Street
Raleigh, North Carolina 27603
Telephone: (919) 600-5000
Facsimile: (919) 600-5035
sharris@milberg.com

**CERTIFICATE OF SERVICE**

I, Scott C. Harris, hereby certify that on May 23, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system.

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**

*/s/ Scott C. Harris*
Scott C. Harris
N.C. Bar No.: 35328
900 W. Morgan Street
Raleigh, North Carolina 27603
Telephone: (919) 600-5000
Facsimile: (919) 600-5035
sharris@milberg.com