IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
                              )
IN RE: NOVANT HEALTH, INC.    )          1:22-CV-697
                              )
```

FILED

JUN 1 7 2024

IN THIS OFFICE
Clerk U.S. District Court
Greensboro
By _____

## MEMORANDUM OPINION, ORDER, and JUDGMENT

Catherine C. Eagles, Chief District Judge.

Last fall, the parties agreed to resolve this data privacy class action by settlement.
In November 2023, the Court preliminarily approved the proposed settlement agreement,
ordered settlement notices to be sent to the putative class members, and set a date for a
final settlement fairness hearing. The plaintiffs have now moved for final approval of the
settlement terms under Federal Rule of Civil Procedure 23 and for attorneys' fees and
other disbursements.

The final settlement hearing was held on June 6, 2024. The Court has considered
the record, including the lack of objections by any class members, the proposed
settlement agreement, the supporting documents, and the statements of counsel during the
final settlement hearing and previous hearings. The Court finds that the proposed
settlement meets the requirements of Rule 23 and that the requested attorneys' fees and
expenses are fair and reasonable.

## I. Background

### A. Procedural History and Surviving Claims

On August 23, 2022, the plaintiffs, Kevin Curry and Christine Curry, filed a
complaint against the defendant, Novant Health, Inc., alleging Novant willfully shared

the plaintiffs' personally identifiable information and personal health information with the company Facebook.[1] Doc. 1 at ¶ 1, p. 2 n.3.[2] Additional plaintiffs filed similar lawsuits against Novant, and the cases were consolidated in October 2022. Doc. 18 at 1–2, 6–7. In November 2022, the plaintiffs filed an amended complaint asserting nine counts against Novant and requesting class certification and appointment of the plaintiffs and their counsel as class representatives.[3] *See generally* Doc. 20.

Novant is a network of clinics, outpatient centers, and hospitals that operates across three states. *Id.* at ¶ 31. It offers an online platform through which patients can receive health care services. *Id.* at ¶ 4. The plaintiffs allege that Novant used a tracking tool called Facebook Pixel to monitor user activity on the Novant platform, *id.* at ¶¶ 37–38, and that Novant then allowed the plaintiffs' personal and health-related information as well as website activity to be sent to Facebook without the plaintiffs' consent. *Id.* at ¶¶ 38–41, 44–46.

Novant filed a motion to dismiss in December 2022. *See* Doc. 25. On August 24, 2023, the Court dismissed all but two counts; state law claims for breach of fiduciary duty and breach of implied contract survived the motion. Doc. 44 at 13.

---

[1] Meta is the parent company of Facebook, and the relevant tracking tool is associated with Facebook. Doc. 1 at ¶¶ 4–5. For clarity, the Court will refer to both Meta and Facebook as Facebook.

[2] All citations use the pagination appended by the CM/ECF system.

[3] Christine Curry was a named plaintiff in the original complaint, Doc. 1 at 1, but Meghan Curry replaced Christine Curry as a plaintiff in the amended complaint. Doc. 20 at ¶ 24; Doc. 61 at 2, and the Court appointed Meghan Curry as one of the class representatives. Doc. 55 at ¶ 8.

2

Before the Court's order on the motion to dismiss, the parties met to discuss a potential settlement. Doc. 52 at 9. On August 21, 2023, the parties agreed to a settlement in principle. *Id.* Three days later, just after the Court issued its order on the motion to dismiss, the parties filed a notice of settlement. Doc. 45.

### B. October 2023 Hearing and Preliminary Approval Order

On October 12, 2023, the plaintiffs filed an unopposed motion for preliminary approval of a class action settlement, Doc. 51, and a signed settlement agreement. Doc. 52-1. The plaintiffs asked for (1) preliminary approval of the settlement, (2) preliminary certification of the class, (3) approval of the proposed class notice, (4) approval of class counsel and the representative plaintiffs, and (5) the scheduling of a final settlement hearing. Doc. 52 at 29.

On October 30, 2023, the Court held a hearing on the motion for preliminary approval of the settlement. Minute Entry 10/30/2023. At the hearing, the parties clarified the notice plan, the claims and opt-out processes, and the liability release, and otherwise reviewed the settlement with the Court. On November 6, 2023, the Court granted preliminary approval of the settlement and approved the proposed notice. Doc. 55. Attorneys Gary Klinger and Scott Harris (collectively "Class Counsel") were appointed as lead class counsel, *id.* at ¶ 9, and Postlethwaite & Netterville was appointed as Settlement Administrator. *Id.* at ¶ 10.

### C. Post-Preliminary Approval

On December 5, 2023, the Court supplemented the preliminary approval order to require the Settlement Administrator to show compliance with the preliminary approval

order and to provide information about the number of email notices and postcard notices sent and returned, the number of class members who opted-out, and the number of class members who submitted claims. Doc. 57. On May 20, 2024, the plaintiffs filed the Settlement Administrator's declaration. Doc. 63-1. The Settlement Administrator identified 1,361,159 unique settlement class members; notice reached 1,349,789 of those members,[4] or 99.2% of the class. *Id.* at ¶ 15. Thirty-seven members opted-out of the class and 159,881 submitted valid and timely claims.[5] *Id.* at ¶¶ 17–18.

On May 23, 2024, the plaintiffs filed their unopposed motion for final approval of the class action settlement. Doc. 64. The Court held a final settlement hearing on June 6, 2024. Minute Entry 06/06/2024.

## II. Certification of Settlement Classes under Rule 23(a)

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (cleaned up). To qualify for the exception, the plaintiffs "must affirmatively demonstrate [their] compliance" with Federal Rule of Civil Procedure 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *see also Thorn v. Jefferson-*

---

[4] The Settlement Administrator considered a class member "reached" by direct notice if either (1) an emailed short-form notice was successfully sent to the class member or (2) the mailed notice was not returned by the United States Postal Service as undeliverable or, if a mailed notice was returned as undeliverable, a second notice was mailed to an alternative mailing address for the Settlement Class Member and was not returned. Doc. 63-1 at n.2.

[5] The deadline to opt-out of the class was April 4, 2024. Doc. 55 at ¶ 16. The court-ordered deadline to submit claims was May 4, 2024, *id.* at ¶ 15, but the Settlement Administrator processed claims postmarked or submitted online through May 6, 2024. *See* Doc. 63-1 at ¶ 17; *see also id.* at p. 20 (notice of class action settlement with deadlines).

4

*Pilot Life Ins. Co.*, 445 F.3d 311, 318 (4th Cir. 2006) (stating "district courts must conduct a rigorous analysis to ensure compliance with Rule 23" (cleaned up)); *see generally* FED. R. CIV. P. 23(a).

As a threshold matter, Rule 23 requires the proposed class members be readily identifiable and the proposed class representatives be members of the proposed class. *See Peters v. Aetna Inc.*, 2 F.4th 199, 241–42 (4th Cir. 2021) (recognizing an "implicit threshold requirement" that class members be readily identifiable); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997) ("A class representative must be part of the class." (cleaned up)).

The proposed class for settlement purposes is defined as follows:

> All individuals residing in the United States who the defendant identified as potentially having their personal or health-related information disclosed to a third party because of the defendant's use of tracking tools on the defendant's websites or MyChart patient portal between May 1, 2020, and August 12, 2022.

Doc. 55 at ¶ 5 (cleaned up). Novant identified and contacted all potential class members, including the class representatives, Doc. 20 at ¶¶ 2, 21–30, 44–45, and provided the Settlement Administrator with the names and contact information for all class members. Doc. 63-1 at ¶ 6. The Rule 23 threshold requirements are met.

Plaintiffs must also establish the four enumerated requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. *Peters*, 2 F.4th at 241 (citing FED. R. CIV. P. 23(a)). "These four requirements effectively limit the class claims to those fairly encompassed by the named plaintiffs' claims." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 654 (4th Cir. 2019) (cleaned up).

5

### A. Numerosity and Commonality

Rule 23(a) requires that "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). While "no specified number is needed to maintain a class action, . . . a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone." *In re Zetia (Ezetimibe) Antitrust Litig.*, 7 F.4th 227, 234 (4th Cir. 2021) (cleaned up). The final class contains 1,361,159 individuals, 37 of whom opted-out. Doc. 63-1 at ¶¶ 6, 18. Joinder of over 1.3 million plaintiffs would be impracticable. *See* FED. R. CIV. P. 23(a)(1).

To satisfy the commonality requirement, there must be "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart*, 564 U.S. at 349–50 (cleaned up). A single common question is enough if it is "of such a nature that its determination 'will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *EQT Prod. Co. v. Adair*, 764 F.3d 347, 360 (4th Cir. 2014) (quoting *id.* at 350); *see also Carolina Youth Action Project; D.S. ex rel. Ford v. Wilson*, 60 F.4th 770, 780 (4th Cir. 2023) (finding commonalty requirement satisfied when a common contention is capable of class wide resolution).

Here, common questions of law and fact exist. Every class member alleges the same harm caused by the defendant's actions and raises the same questions concerning Novant's legal and fiduciary duties, whether it breached a duty, and if so, what kind of relief is available to the class members. These legal questions stem from the same alleged facts: that Novant relied on Facebook to track and monitor every person that

6

interacted with its website and that Facebook thus had access to the personally identifiable information and personal health information of the class members, without their permission or consent. Doc. 20 at ¶¶ 37–43.

## B. Typicality

To satisfy the typicality requirement, "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). "The typicality requirement is met where 'the claims asserted by the named plaintiffs arise from the same course of conduct and are based on the same legal theories as the claims of the unnamed class members.'" *Tatum v. R.J. Reynolds Tobacco Co.*, 254 F.R.D. 59, 65 (M.D.N.C. 2008). "The typicality requirement goes to the heart of a representative parties' ability to represent a class," and the named plaintiffs' interest in prosecuting their cases "must simultaneously tend to advance the interests of the absent class members." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006).

Here, the typicality requirement is met. The claims of the named plaintiffs are typical of the claims of the class members because the claims asserted arise from Novant's alleged monitoring of all class members. *See Tatum*, 254 F.R.D. at 65. The named plaintiffs also advance the interests of the absent class members because they allege the same injuries and legal harms any class member would raise.

## C. Adequacy of Representation

Rule 23 requires that the class representatives "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they

7

seek to represent," as well as "competency and conflicts of class counsel." *Amchem*, 521

U.S. at 625, 626 n.20; *see also Wal-Mart*, 564 U.S. at 349 n.5.

The Court appointed the named plaintiffs as class representatives of the settlement

class. Doc. 55 at ¶ 8. The named plaintiffs assert the same harms and have the same

interests as the class members. *See* Doc. 20 at ¶¶ 21–30. The existence of conflicts of

interest between the class representatives and class members is improbable, and there is

nothing to indicate such conflict, as the settlement treats all class members the same.

The Court preliminarily appointed attorneys Mr. Klinger and Mr. Harris as lead

class counsel. Doc. 55 at ¶ 9. They are both partners at a law firm that has handled

hundreds of class actions since its inception in 1965. Doc. 52-2 at ¶¶ 1–2, 22; Doc. 53 at

¶ 1. Mr. Klinger has been appointed class counsel in over 45 class actions, many

involving data breach and data privacy matters. *See* Doc. 52-2 at ¶ 6. He also has served

as class counsel in similar data tracking pixel disclosure lawsuits, Doc. 54 at ¶ 2, and is

familiar with this new area of litigation. *Id.* at ¶¶ 3–4. Mr. Klinger has represented the

named plaintiffs in this matter since November 2022. *See* Docket Entry 11/01/2022. He

is competent to handle this case given his background in data-related legal matters and

his experience in other class actions. *See* Doc. 52-2 at ¶¶ 6–15.

Mr. Harris is a senior partner and North Carolina attorney associated with the same

firm. Doc. 53 at ¶¶ 1, 5. He has more than 17 years of experience with class action

litigation and has been appointed lead counsel on several cases in the Middle District of

North Carolina. *Id.* at ¶¶ 4, 6–8. He is familiar with the local rules and competent to

handle this case given his experience with class actions and the Middle District.

8

The Court authorized other plaintiffs' attorneys to participate as needed and appropriate, Doc. 55 at ¶ 9, and attorneys from five other firms signed the motion for final settlement approval. Doc. 64 at 3–4. These attorneys and their firms have extensive experience in class action litigation, including data privacy related class actions. *See* Doc. 61-2 at ¶¶ 3–4; Doc. 61-3 at ¶¶ 3–4; Doc. 61-5 at ¶ 1; *see also* Doc. 52-2 at 33–116 (biographies and credentials of the firms and attorneys). They and their law firms have taken a leading role in data security class actions and data tracking pixel litigation. *See* Doc. 61-1 at ¶¶ 24–25; *see also, e.g.*, Doc. 52-2 at 27, 38, 46–47, 58, 60–61, 93–95, 108, 110–12. All attorneys have worked well together in the interests of their clients and the class. The Rule 23(a) adequacy of representation requirements are met.

## III. Common Issues of Law and Fact Under Rule 23(b)

To obtain class certification, the plaintiffs must establish that the case fits into at least one of the three subsections of Rule 23(b). *Comcast*, 569 U.S. at 33. For certification of classes with common issues of law or fact, courts must find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. When the issue of liability is "common to the class, common questions are held to predominate over individual ones." *In re BearingPoint, Inc. Sec. Litig.*, 232 F.R.D. 534, 542 (E.D. Va. 2006).

Here, the similarities are extensive and create predominating questions of law and fact. Each class member visited Novant's website, entered personal and health-related information online, and later learned that this information was shared with Facebook without the class member's consent. Doc. 20 at ¶¶ 1–6, 9–11.

Courts have found common questions of law and fact predominated in cases involving data breaches, which are somewhat similar to the claims made here. *See, e.g.,* *Abubaker v. Dominion Dental USA, Inc.*, No. 19-CV-1050, 2021 WL 6750844, at *3 (E.D. Va. Nov. 19, 2021) (certifying class for settlement involving data breach); *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, No. 16-CV-3025, 2019 WL 3183651, at *4 (D. Md. July 15, 2019). Where the actions of the defendant similarly affected every class member, common questions predominate.

Class action adjudication of this matter is also superior to other methods. The lead plaintiffs have represented the class members fairly and adequately. *See, e.g.,* Doc. 61-7 at ¶¶ 4–6. They assert the same harms and interests and have claims typical of the class members. *See generally* Doc. 20. Class Counsel have provided adequate representation. Mr. Klinger is experienced in class action litigation, Doc. 52-2 at ¶¶ 6–17, and has worked with the lead plaintiffs since November 2022. *See* Docket Entry 11/01/2022.

Class certification is also superior and more efficient than individual litigation. The class includes over 1.3 million members, Doc. 63-1 at ¶ 6; individual litigation would consume large amounts of resources and time of the Court and the parties, much of the work duplicative. The requirements for class certification under Rule 23(b) are met. *See* FED. R. CIV. P. 23(b)(3).

10

## IV. Final Settlement Approval

"It has long been clear that the law favors settlement." *United States v. Manning Coal Corp.*, 977 F.2d 117, 120 (4th Cir. 1992). This is particularly true in class actions. *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998) (noting the "strong judicial policy in favor of settlements, particularly in the class action context"); *Reed v. Big Water Resort, LLC*, No. 14-CV-1583, 2016 WL 7438449, at *5 (D.S.C. May 26, 2016) (quoting same); WILLIAM B. RUBENSTEIN, 4 NEWBERG & RUBENSTEIN ON CLASS ACTIONS § 13.44, n.1 (6th ed. 2022) (collecting cases).

Courts may approve a class settlement only if it is "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2). Courts in this circuit bifurcate the analysis into "consideration of fairness, which focuses on whether the proposed settlement was negotiated at arm's length, and adequacy, which focuses on whether the consideration provided the class members is sufficient." *Roldan v. Bland Landscaping Co.*, No. 20-CV-276, 2022 WL 17824035, at *2 (W.D.N.C. Dec. 19, 2022) (cleaned up); *see also Beaulieu v. EQ Indus. Servs., Inc.*, No. 6-CV-400, 2009 WL 2208131, at *23 (E.D.N.C. July 22, 2009) (citing *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158–59 (4th Cir. 1991)).

### A. Fairness

The fairness analysis aims "to ensure that a settlement is reached as a result of good faith bargaining at arm's length, without collusion." *Berry v. Schulman*, 807 F.3d 600, 614 (4th Cir. 2015) (cleaned up). Courts apply a four-factor test to determine the fairness of a proposed settlement: "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances

11

surrounding the negotiations, and (4) the experience of counsel in the area of" law at issue. *In re Jiffy Lube*, 927 F.2d at 158–59; *accord 1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 525 (4th Cir. 2022).

Here, all four fairness factors support approval. This case has been pending for almost two years. *See* Doc. 1 (complaint filed on August 23, 2022). The defendant's motion to dismiss was filed in December 2022, Doc. 25, and was partially granted in August 2023. Doc. 44. While the Court was evaluating the motion to dismiss, the parties negotiated a settlement. Doc. 45; Doc. 52 at 9. They met with an independent mediator and filed a proposed settlement agreement on October 12, 2023. *See generally* Doc. 52-1. The posture of the case at the time of settlement gave the parties a good preview of the likely legal and factual disputes; it was also a time of uncertainty and risk, given the pending motions. Both circumstances made settlement a reasonable option to explore.

This case settled before Novant filed an answer and before formal discovery, but Novant provided a substantial amount of information about the pixel problem in advance of the case, both notifying the plaintiffs of the potential data sharing and filing a report on the issue with the United States Department of Health and Human Services. Doc. 20 at ¶¶ 2–3; Doc. 61-7 at ¶ 3 (declaration of named plaintiff stating Novant notified him about disclosure). Class Counsel gathered publicly available information, Doc. 52-2 at ¶ 26, and Novant gave the contact information for class members to the Settlement Administrator. *See* Doc. 63-1 at ¶ 6. The parties also engaged in a limited and informal discovery process for settlement purposes. Doc. 52-1 at ¶ 9.

12

Mediation was conducted by an independent mediator and was a collaborative process. *See* Doc. 52-2 at ¶¶ 32–33. After the parties informed the Court that a preliminary settlement had been reached, Doc. 45, they asked for and were given more time to submit a settlement agreement, Doc. 48; Doc. 49; Doc. 50, so that counsel could review the proposed agreement with all parties. Doc. 49 at ¶¶ 4–5. The named plaintiffs reviewed the terms of the proposed settlement and worked with the attorneys during settlement negotiations. *See, e.g.*, Doc. 61-10 at ¶ 4; Doc. 61-13 at ¶ 6. The diligence of the parties, the timing and circumstances surrounding the negotiations, and the experience of counsel, discussed *supra* at pp. 8–9, support a finding of fairness.

### B. Adequacy and Reasonableness

Courts assess the adequacy of a settlement through the following factors:

> (1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement.

*In re Jiffy Lube*, 927 F.2d at 159; *see also 1988 Tr.*, 28 F.4th at 526 (applying the same factors). Courts should also examine "the amount of the settlement" and "ensure[] that the amount on offer is commensurate with the scale of the litigation and the plaintiffs' chances of success at trial." *1988 Tr.*, 28 F.4th at 527.

Two of the plaintiffs' nine claims survived a motion to dismiss: breach of an implied contract and breach of fiduciary duty. Doc. 44 at 13. The law surrounding data

privacy and the surreptitious sharing of user data is still developing, making it challenging for the parties to evaluate the likelihood of prevailing at trial.[6]

Mr. Klinger provided examples of other data breach cases in which he has served as class counsel and the types of settlements obtained. Doc. 52-2 at ¶¶ 6–14. At least two of the cases involved a medical provider's use of online tracking tools and the unauthorized disclosure of the plaintiffs' private information. *See* Doc. 54 at ¶ 2. Both reached settlements that were approved in 2023. *Id.* Based on the approved settlement amount and class size in these cases and the data breach cases, *see* Doc. 52-2 at ¶¶ 6–14, the settlement amount is reasonable and adequate.

The risks of litigation for both parties and the costs of proceeding to trial support a finding that the settlement is reasonable. As the plaintiffs point out, lengthy discovery, including the deposing of expert witnesses on damages, motions for summary judgment, and a motion for class certification would occur before final resolution could take place. Doc. 52 at 19–20. The calculation of damages at trial is uncertain given that law in this area is developing. And the plaintiffs could appeal the dismissal of the federal claims if the case were to go to trial, leading to additional uncertainty for the defendant. The continuation of the litigation is expensive and risky for both parties. Novant is a large

---

[6] *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 17-CV-2800, 2020 WL 256132, at *32 (N.D. Ga. Mar. 17, 2020) (recognizing novel and difficult questions surround data breach litigation), *rev'd in part on other grounds*, 999 F.3d 1247 (11th Cir. 2021); *Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-CV-1415, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) (granting final approval of class action settlement and calling data breach cases "particularly risky, expensive, and complex"); *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 941 (N.D. Ill. 2022) (stating "[d]ata privacy law is a relatively undeveloped and technically complex body of law").

entity with substantial assets, it was insured for any losses incurred in this case, and there are no issues about Novant's solvency that affected settlement.

The settlement provides substantial benefit to the class members. It is non-reversionary, Doc. 52-1 at ¶ 21, and class members who submitted valid and timely claims will get a *pro rata* distribution of the settlement funds. *Id.* at ¶¶ 10, 34. The claims process was straightforward and accessible. Class members could submit claims either online or by mailing the postcard claim form to the Settlement Administrator, and they could elect to receive a physical check or digital payment. Doc. 63-1 at ¶ 16; *see also infra* at pp. 16–17 (discussing notice). Approximately 11.7% of the settlement class submitted claims. Doc. 63-1 at ¶ 17. By providing digital options, the Settlement Administrator was able to reduce mailing costs and retain more money to pay class members. Counsel confirmed that Novant's insurer deposited $6,660,000 into a settlement fund. *See* Doc. 66 at 2.

The class had the opportunity to object and opt-out of the settlement. Thirty-seven of over 1.3 million members opted-out and not a single member objected. The degree of opposition to the settlement is low and the small number of exclusion requests indicate the settlement is fair, adequate, and reasonable. *See In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 257 (E.D. Va. 2009) (stating "an absence of objections and a small number of opt-outs weighs significantly in favor of the settlement's adequacy").

The *In re Jiffy Lube* factors weigh in favor of final approval. The settlement meets the fairness, adequacy, and reasonableness requirements of Rule 23(e). *See* FED. R. CIV. P. 23(e)(2).

15

## V.  Sufficiency of Notice

"In the context of a class action, the due process requirements of the Fifth Amendment require reasonable notice combined with an opportunity to be heard and withdraw from the class." *Domonoske v. Bank of Am., N.A.*, 790 F. Supp. 2d 466, 472 (W.D. Va. 2011) (cleaned up).  For classes certified under Rule 23(b)(3), class members must receive the "best notice" that is "practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FED. R. CIV. P. 23(c)(2)(B).

The court-approved notice process was reasonable and provided the class members with the best notice practicable under the circumstances.  The Settlement Administrator sent email notice to each class member for whom it had a valid email address.  Doc. 63-1 at ¶¶ 6–7.  Given the nature of the claims and the fact that all class members had participated in online access to medical records, use of email notice was particularly likely to be effective.  In the few cases where the class member did not have an email address on file or if the email bounced back, the Settlement Administrator sent postcard notice via first class mail.  *Id.* at ¶ 8.  Before sending a postcard notice, the Settlement Administrator took steps to ensure it had valid mailing addresses.  *Id.* at ¶ 9. If mail was returned as undeliverable, the Settlement Administrator worked to obtain updated contact information and, when it did, sent the mailing a second time.  *Id.* at ¶ 10. In total 1,349,789 class members received notice, either via email or postcard notice.  *Id.* at ¶ 15.  The Settlement Administrator also maintained a website, toll-free telephone number, and email address for the class members, and received many thousands of

16

inquiries from class members, *id.* at ¶¶ 12–14, further indicating that notices were received.

The notice period began on January 4, 2024, and ended on February 1, 2024. *Id.* at ¶¶ 7–8. All class members were informed of how to opt-out or object, that final approval will bind class members, and of the date, time, and location of the final settlement hearing. *Id.* at pp. 23–33. Class members had until April 4, 2024, to opt-out of the class or object to the settlement. *Id.* at ¶¶ 18–19. The significant number of inquiries from class members and claims filed indicates that notice was widely received. The notice was reasonable and satisfies the requirements of due process.

## VI.    Attorneys' Fees and Expenses

In a class action, "the court may award reasonable attorney's fees and nontaxable costs as authorized by law or by the parties' agreement." FED. R. CIV. P. 23(h). When an attorney recovers a common fund for the benefit of a class, counsel "is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

Courts calculate attorneys' fees in class actions using either the "lodestar" method or the "percentage of fund" method. *Jones v. Dominion Res. Servs., Inc.*, 601 F. Supp. 2d 756, 758 (S.D.W. Va. 2009). In a common fund case, "a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). The Fourth Circuit does not require the use of the percentage of fund method, but district courts in this circuit overwhelmingly apply it. *See Phillips v. Triad Guaranty Inc.*,

Case 1:22-cv-00697-CCE-JEP   Document 67   Filed 06/17/24   Page 17 of 29

No. 9-CV-71, 2016 WL 2636289, at *2 (M.D.N.C. May 9, 2016); *see also Jones*, 601 F.

Supp. 2d at 758 (collecting cases).

To determine the reasonableness of the fee award, courts assess the factors

identified in *Barber v. Kimbrell's, Inc.* or a variant of those factors.[7]  *See* 577 F.2d 216,

226 n.28 (4th Cir. 1978); *Phillips*, 2016 WL 2636289, at *3–4.  The *Barber* factors are:

> (1) the time and labor expended; (2) the novelty and difficulty of the
> questions raised; (3) the skill required to properly perform the legal
> services rendered; (4) the attorney's opportunity costs in pressing the
> instant litigation; (5) the customary fee for like work; (6) the
> attorney's expectations at the outset of the litigation; (7) the time
> limitations imposed by the client or circumstances; (8) the amount in
> controversy and the results obtained; (9) the experience, reputation
> and ability of the attorney; (10) the undesirability of the case within
> the legal community in which the suit arose; (11) the nature and length
> of the professional relationship between attorney and client; and (12)
> attorneys' fees awards in similar cases.

577 F.2d at 226 n.28 (adopting factors from *Johnson v. Ga. Highway Express, Inc.*, 488

F.2d 714, 717–19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*,

489 U.S. 87, 92–93 (1989)).

### A. Application of Barber Factors

Class Counsel asks for one-third of the $6,660,000 common fund in attorneys'

fees, or $2,220,000, to pay all attorneys and law firms involved on behalf of the named

plaintiffs and the class.  Doc. 52-1 at ¶ 65; Doc. 60; *see also* Doc. 66 at 1 (explaining

---

[7] Class Counsel applies the *In re The Mills Corp. Sec. Litig.* factors in their briefing.  *See* Doc. 61 at 9; *see also* 265 F.R.D. 246, 261 (E.D. Va. 2009).  The Court will apply the *Barber* factors, but many of the *Mills* factors are reflected in the factors identified in *Barber*.  *Compare Barber*, 577 F.2d 216, 226 n.28 (4th Cir. 1978), *with In re The Mills*, 265 F.R.D. at 261; *see also Phillips v. Triad Guaranty Inc.*, No. 9-CV-71, 2016 WL 2636289, at *4 (M.D.N.C. May 9, 2016) (acknowledging the overlap of factors).

payment distribution for all of the plaintiffs' attorneys including Class Counsel). For a number of reasons, this request is reasonable.

The Fourth Circuit has "noted that the most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 247 (4th Cir. 2010) (cleaned up). Mr. Klinger represents that he has obtained similar settlement amounts in class actions concerning data breaches. *See, e.g.*, Doc. 52-2 at ¶¶ 9, 11–12. Although data breaches differ from unauthorized data disclosures, these settlement amounts are informative and tend to indicate that the settlement obtained here was a successful resolution.

More specifically, Mr. Klinger has served as co-lead counsel on two unauthorized data disclosure cases similar to this case and obtained comparable settlements in both. Doc. 54 at ¶ 2. He cites a third unauthorized data disclosure class action that he did not handle but in which counsel obtained a settlement amount on par with what the parties have agreed to here. *Id.* at ¶ 3. These cases reflect that a settlement of $6,660,000 for a class of approximately 1.3 million is a strong recovery.

Unauthorized data disclosures and data tracking lawsuits present questions of law that are novel and injuries that are challenging to quantify. *See* Doc. 52-2 at ¶¶ 31, 36; *see also supra* note 6. Because of the complexity of the case, Class Counsel retained two data privacy and tracking technology experts during litigation. Doc. 61-1 at ¶¶ 10–11. At the time the parties reached a settlement, this case was one of only a few class action settlements concerning data disclosures and the use of a data tracking pixel. *Id.* at ¶ 21.

The presence of novel and challenging legal and factual questions supports approval of the attorneys' fee request.

The experience, reputation, and abilities of Class Counsel also support the award amount. The Court preliminary appointed Mr. Klinger and Mr. Harris as class counsel but authorized the participation of other plaintiffs' attorneys. Doc. 55 at ¶ 9. Mr. Klinger and Mr. Harris served as lead counsel on behalf of the class, *see* Doc. 61-1 at ¶¶ 10–17, 21–22, with substantial assistance from lawyers at five other firms. *See* Doc. 61-2 at ¶¶ 6–7; Doc. 61-3 at ¶ 5; Doc. 61-4 at ¶ 3; Doc. 61-5 at ¶ 3; Doc. 61-6 at ¶ 3.

All of these attorneys bring significant skills, expertise, and experience to this class action settlement. *See supra* at pp. 8–9; Doc. 52-2 at ¶¶ 25, 28. They have handled other data security class actions and data tracking pixel litigation. *See* Doc. 61-1 at ¶¶ 24–25; *see also supra* at p. 9; Doc. 52-2 at pp. 27, 38, 46–47, 58, 60–61, 93–95, 108, 110–11. Class Counsel is familiar with this area of litigation, Doc. 54 at ¶¶ 2–4, and has negotiated similar class action settlements. *See supra* at pp. 8–9, 14. The requested award amount is supported by the skills, ability, and experience provided by Class Counsel and the plaintiffs' attorneys.

Class Counsel and the plaintiffs' attorneys spent substantial time and labor resolving this case and obtained an appropriate settlement amount. Doc. 61-1 at ¶¶ 10–17; Doc. 61-2 at ¶ 6; Doc. 52-2 at ¶ 27. Class Counsel, with the assistance of other attorneys, consolidated multiple, related complaints, identified class representatives, and oversaw the filing of the consolidated class action. Doc. 61-1 at ¶¶ 13, 15–17; Doc. 61-2 at ¶ 6. They worked with the plaintiffs to gather all the information that was publicly

20

available about the data disclosure. Doc. 52-2 at ¶ 26. The plaintiffs' attorneys then conducted legal research, participated in two mediation sessions, and engaged in detailed negotiations to reach a final settlement agreement. Doc. 61-1 at ¶¶ 18–22, 32; Doc. 61-2 at ¶ 6. The time and effort plaintiffs' counsel put into this case prevented them from pursuing other matters and support the requested award.

The various class representatives had different attorneys at the outset of the case. Class Counsel and these attorneys have established ongoing, professional relationships, *see* Doc. 52-2 at ¶ 31; Doc. 61-2 at ¶ 6, and have worked closely with the class representatives. Doc. 52-2 at ¶ 29. Class Counsel filed the initial complaint in August 2022. *See* Doc. 1 at 28–29. During settlement negotiations, the attorneys and the class representatives discussed the complexity of the case, the benefits of settlement, and the costs and uncertainties of litigation. Doc. 52-2 at ¶¶ 29–31; Doc. 61-2 at ¶ 6; *see also* Doc. 61-3 at ¶ 8 (stating attorneys consulted with clients, attended mediation, and negotiated settlement); Doc. 61-4 at ¶ 6; Doc. 61-5 at ¶ 6; Doc. 61-6 at ¶ 6. The award of attorneys' fees is supported by the nature and length of the professional relationships Class Counsel and the other plaintiffs' attorneys have with the representative plaintiffs.

The plaintiffs' attorneys request an award of attorneys' fees equal to one-third of the settlement. Doc. 61 at 5. Courts in the Fourth Circuit have found awards of approximately one-third of the class fund to be reasonable. *See, e.g.*, *McAdams v. Robinson*, 26 F.4th 149, 162 (4th Cir. 2022) (affirming fee award of 43% of common fund but acknowledging it approached "the upper limit of permissible recovery"); *Kruger v. Novant Health, Inc.*, No. 14-CV-208, 2016 WL 6769066, at *2 (M.D.N.C. Sept. 29,

2016); *Chrismon v. Pizza*, No. 19-CV-155, 2020 WL 3790866, at *5 (E.D.N.C. July 7, 2020). The amount sought is also comparable to awards in other data tracking pixel cases, *see* Doc. 61-1 at ¶ 30, and data privacy class actions. *See, e.g., Lamie v. LendingTree, LLC*, No. 22-CV-307, 2024 WL 811519, at *2 (W.D.N.C. Feb. 27, 2024); *Thomsen v. Morely Cos.*, No. 22-CV-10271, 2023 WL 3437802, at *2 (E.D. Mich. May 12, 2023); *In re Forefront Data Breach Litig.*, No. 21-CV-887, 2023 WL 6215366, at *8 (E.D. Wis. Mar. 22, 2023).

The fee award is customary and typical of like awards. Under the *Barber* factors, the requested award of $2,220,000 is reasonable.

### B. Lodestar Cross-Check

Courts that apply the percentage of funds method can also conduct a lodestar cross-check to evaluate the reasonableness of an attorneys' fee award. *Phillips*, 2016 WL 2636289, at *7. To calculate a lodestar figure, courts multiply a reasonable hourly rate times the hours reasonably expended. *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008). "The purpose of a lodestar cross-check is to determine whether a proposed fee award is excessive relative to the hours reportedly worked by counsel, or whether the fee is within some reasonable multiplier of the lodestar." *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 467 (D. Md. 2014). When courts use the lodestar cross-check, they "need not apply the exhaustive scrutiny typically mandated" and can "accept the hours estimates provided by counsel." *In re The Mills*, 265 F.R.D. at 264 (cleaned up).

At the time Class Counsel filed the motion for attorneys' fees, all the plaintiffs' attorneys including Class Counsel had collectively expended some 1,600 hours on this

22

case.[8] The attorneys coordinated with each other to ensure work was done efficiently and without unnecessary duplication. Doc. 61-1 at ¶ 5. When possible, work was delegated to associate attorneys and paralegals. *Id.* The reported hours constitute a reasonable basis for a cross-check. *See In re The Mills*, 265 F.R.D. at 264.

To decide a reasonable billing rate, courts look to the prevailing market rates, including the attorneys' actual billing rate and "fees paid to attorneys of comparable skill in similar circumstances." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994). Courts often recognize national market rates when deciding reasonable billing rates for complex class action litigation. *See Feinberg v. T. Rowe Price Grp., Inc.*, 610 F. Supp. 3d 758, 772–73 (D. Md. 2022); *see also Binotti v. Duke Univ.*, No. 20-CV-470, 2021 WL 5366877, at *4 (M.D.N.C. Aug. 30, 2021) (reviewing hourly market rates approved across circuits and finding proposed rate reasonable).

The reported billing rates for attorneys and professional staff in this matter range from approximately $200 to $1,000 an hour and are based on their customary rates. *See, e.g.*, Doc. 61-1 at ¶¶ 37–38; Doc. 61-3 at ¶¶ 5–6; Doc. 61-5 at ¶¶ 3–4. The rates are similar to those charged by attorneys with equivalent experience and credentials in this area of law. Doc. 61-1 at ¶¶ 8–9. While on the high side, these hourly rates are on par with rates previously approved in this circuit in complex class action litigation. *See*

---

[8] Mr. Klinger and Mr. Harris state that the plaintiffs' attorneys completed 1,573.3 hours of work at the time they submitted the motion for attorneys' fees. Doc. 61-1 at ¶ 5. The Court added the total hours submitted from each firm to get 1,608.2 hours as of the filing of the motion and declarations. *See* Doc. 61-1 at ¶ 37; Doc. 61-2 at ¶ 7; Doc. 61-3 at ¶ 5; Doc. 61-4 at ¶ 3; Doc. 61-5 at ¶ 3; Doc. 61-6 at ¶ 3.

*Kruger*, 2016 WL 6769066, at *4; *Feinberg*, 610 F. Supp. 3d at 772–73 (confirming reasonableness of fee award in ERISA class action after conducting lodestar cross-check with rates comparable to the rates here); *McCoy v. North State Aviation, LLC*, No. 17-CV-346, Doc. 51 at 3–4 (M.D.N.C. June 15, 2018) (approving fee request after conducting lodestar cross-check with attorney and paralegal rates ranging from $150 to $700).

The requested fee amount represents a lodestar multiplier of approximately 1.86. Doc. 61 at 15 (plaintiffs' counsel's computation).[9] This multiplier is on the low end of the spectrum. *See Jones*, 601 F. Supp. 2d at 766 (stating courts generally find multipliers "between 2 and 4.5 demonstrate a reasonable attorneys' fee"); *Kruger*, 2016 WL 6769066, at *5 (approving award when cross-check yielded 3.69 multiplier); *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 483 (D. Md. 2014) (approving attorneys' fees when cross-check resulted in 3.9 multiplier). It is likely this multiplier will go down further as counsel oversee the distribution to class members and complete other tasks essential to fully resolving the matter. A lodestar cross-check confirms that the requested attorneys' fees are reasonable.

### C. Firm Expenses

Federal Rule of Civil Procedure 23(h) allows courts approving class action settlements to award nontaxable costs authorized by law or by the parties' agreement. FED. R. CIV. P. 23(h). Courts in the Fourth Circuit will allow reasonable, litigation-

---

[9] When the Court multiplied the reported hours worked for each attorney by their respective reasonable rates and then added those values together, it yielded a lodestar amount of just over $1,199,000. This resulted in a lodestar multiplier of 1.85.

24

related expenses in addition to the fee award. *See Decohen*, 299 F.R.D. at 483; *Binotti*, 2021 WL 5366877, at *5.

Class Counsel and the plaintiffs' attorneys request an award of $18,134.70 in litigation expenses, *see* Doc. 66 at 2, most of which was plaintiffs' share of the mediator's fee. Doc. 61-1 at ¶ 34. The remaining expenses include filing fees, costs of service of process, attorneys' court admissions, and the necessary travel and expenses associated with the final settlement hearing. *See id.*[10] The Court approves an award of $18,134.70 to cover these litigation-related expenses. The requested amount is fair and reasonable.

## VII. Service Awards

Service awards are "fairly typical in class action cases." *Berry*, 807 F.3d at 613 (cleaned up). They are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize [the representatives'] willingness to act as a private attorney general." *Id.* (cleaned up). Service awards also "encourage socially beneficial litigation;" if not for the class representatives, class members would receive nothing. *Kay Co. v. Equitable Prod. Co.*, 749 F. Supp. 2d 455, 472 (S.D.W. Va. 2010).

The plaintiffs request a service award of $2,500 per class representative. Doc. 61 at 5; *see also* Doc. 52-1 at ¶ 66 (parties' agreement). The 10 class representatives have

---

[10] *See also* Doc. 61-1 at ¶ 43 ($12,731.75 for filing fees, service of process, special appearance fees, ADR, travel and lodging, experts); Doc. 61-2 at ¶ 12 ($844.84 for pro hac vice application, copies, research, travel); Doc. 61-3 at ¶ 10 ($1,628.51 for pro hac vice applications and incidentals, travel, and lodging); Doc. 61-5 at ¶ 8 ($2,110.25 for filing fees, travel, Westlaw and Pacer, and service of process); Doc. 61-6 at ¶ 8 ($819.42 for reproduction, legal research, and filing fees).

Case 1:22-cv-00697-CCE-JEP   Document 67   Filed 06/17/24   Page 25 of 29

been involved and active in this case. *See, e.g.*, Doc. 61-7 at ¶¶ 4–6; Doc. 61-8 at ¶¶ 4–6; Doc. 61-9 at ¶¶ 4–6. They reviewed the complaint, stayed in touch with their attorneys, and participated in settlement negotiations, including by reviewing and approving the terms of the proposed settlement. *See, e.g.*, Doc. 61-13 at ¶¶ 4–6; *see also* Doc. 52-2 at ¶¶ 29, 39.

The service award is reasonable based on the time these tasks would reasonably take. It is also reasonable compared to other service awards approved in this district and the Fourth Circuit. *See Kay*, 749 F. Supp. 2d at 473 (finding requested award too high and granting award of $15,000 per plaintiff for six named plaintiffs); *In re MI Windows and Doors Inc. Prods. Liab. Litig.*, No. 12-CV-1, 2015 WL 4487734, at *6 (D.S.C. July 23, 2015) (approving service award of $5,000 for each named plaintiff); *Kruger*, 2016 WL 6769066, at *6 (approving $25,000 service award for each of seven representatives). And it is appropriate when compared to service awards approved in common fund data privacy class action settlements. *See, e.g., In re Cap. One Consumer Data Sec. Breach Litig.*, No. 19-CV-2915, 2022 WL 17176495, at *5 (E.D. Va. Nov. 17, 2022) (granting service award of $5,000 per representative). The Court concludes that a service award of $2,500 for each of the 10 named class representatives is fair and reasonable.

## VIII.  Settlement Administration Fees

The Settlement Administrator has incurred a little over $421,000 in costs and expenses associated with the notice program. Doc. 63-1 at ¶ 20. It estimates the final administration costs will be approximately $602,000, *id.*, or about $164,000 less than originally predicted. Doc. 66 at 2. The reduction in administration costs is partially due

26

to the high number of valid class member email addresses Novant provided, allowing the Settlement Administrator to send electronic rather than paper notice. *Id.* The use of digital claims payments also reduced costs. At the final settlement hearing, plaintiffs' counsel represented that the administration costs were comparable to costs accrued in similar class action settlements.

### IX. Determination of Cy Pres Recipient(s)

After paying class representatives, attorneys' fees and expenses, and the settlement administration costs, settlement funds will be distributed via *pro rata* payments to class members who submitted valid and timely claims. Doc. 52-1 at ¶ 10. The settlement is non-reversionary, *id.* at ¶ 21, so residual funds will not be returned to the defendant. If there are any residual funds after claim distribution, for example from uncashed settlement checks, those funds will go to an agreed upon *cy pres* recipient approved by the Court. *Id.* at ¶¶ 10(e), 14(gg).

At the final settlement hearing, counsel asked the Court to hold open the designation of a *cy pres* recipient until the Settlement Administrator determines the amount of residual funds. Counsel stated that the amount available would influence the parties' choice of a *cy pres* recipient or recipients. The Court will hold this matter open.

### X. Conclusion

Final approval of this class action settlement is appropriate. The requirements of Rule 23 are met, and settlement is in the best interests of the class members. The request for attorneys' fees, expenses, and service awards is also reasonable. Final judgment is entered concurrently.

For these reasons and based on the record before it, it is **ORDERED and ADJUDGED** that:

1. The plaintiffs' unopposed motion to approve the class action settlement, Doc. 64, is **GRANTED**.

2. The plaintiffs' motion for attorneys' fees, reimbursement of expenses, and service awards, Doc. 60, is **GRANTED** as follows:

   a. Class Counsel's request for attorneys' fees in the amount of $2,220,000 to be paid from the settlement fund is **GRANTED**.

   b. Class Counsel's request for reimbursement of $18,134.70 in expenses to be paid from the settlement fund is **GRANTED**.

   c. The class representatives' request for service awards of $2,500 each to be paid to Keith David Allen, Karyn Cook, Daymond Cox, Kevin Curry, Meghan Curry, Richard Nero, David Novack, Cheryl Taylor, Fernando Valencia, and Natalie Wells-Reyes from the settlement fund is **GRANTED**.

3. Upon the effective date defined in the settlement agreement, the releasing persons, including the plaintiffs and each settlement class member, shall release and forever discharge the released persons from the released claims, as set forth in the parties' settlement agreement.

4. The Settlement Administrator **SHALL** make all required payments from the settlement fund in accordance with the amounts and the times set forth in the settlement agreement, including all payments to settlement class

members who submitted an approved claim, for the attorneys' fees and costs, for the service awards, and for all settlement administration costs.

5. All funds held by the Settlement Administrator **SHALL** be deemed and considered to be *in custodia legis* of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds are distributed pursuant to the settlement or further order of the Court.

6. No later than October 11, 2024, the Settlement Administrator **SHALL** file a status report concerning distributions.

7. The parties shall thereafter meet and confer about a *cy pres* recipient and **SHALL** file a motion no later than November 27, 2024, or a notice that there are no undistributed funds. The Court further retains jurisdiction to approve a *cy pres* recipient or recipients.

8. The Court hereby enters final judgment, and all claims are **DISMISSED** with prejudice. Without affecting the finality of the judgment entered, the Court reserves jurisdiction over the implementation of the settlement, including enforcement and administration of the settlement agreement.

9. The parties shall bear their own costs except as provided by the settlement agreement and as ordered herein.

This the ~~16th~~ 17th day of June, 2024.

UNITED STATES DISTRICT JUDGE

29